LOTTINGER, Judge.
This is a tort action arising out of an accident which occurred on April 21, 1962, when plaintiff, Grant Moses, was struck by an automobile owned by Lola Bell Sanders and driven by Baty Sanders. Following trial in the court below plaintiff dismissed the suit as to Lola Bell and Baty Sanders *178 and judgment was rendered in favor of the plaintiff and against Marquette Casualty-Company, Lola Bell Sanders’ liability insurer, in the amount of $5000.00 from which judgment the latter has appealed.
While there are considerable discrepancies (of varying degrees of importance) in the testimony, there is no dispute as to the following:
The accident occurred when the plaintiff was struck by the left front of the car driven by Baty Sanders at a point near Hooge’s Store on Louisiana Highway No. 10 in the Parish of East Feliciana. Hooge’s Store is situated in a rural area some sixty feet north of the shoulder of Highway 10 at about midway between the towns of Clinton and Greensburg. Highway 10 is a two lane blacktop road running east and west, level and straight for quite some distance on either side of Hooge’s Store. The weather was clear and dry on the date of the accident. Just prior to the accident Baty Sanders was proceeding in the north lane of Highway 10 in a westerly direction towards Clinton. Plaintiff, just prior to the accident, had been standing next to a vehicle parked either entirely on the shoulder on the south of Highway 10 or partially on the shoulder and partially on the highway. As plaintiff left this car and proceeded in the direction of Hooge’s Store, he was struck in the north lane by the vehicle driven by Baty Sanders.
The testimony of the witnesses Steve Daniels, Joe Jyles, Simon London and Alton E. Robertson establishes without doubt that just prior to the accident there was a car stopped about opposite Hooge’s Store on the south side of the highway. Who was the driver of this car, the direction in which it faced, whether it was altogether off the road or partially thereon and whether it was the only car on the south of the road at that time are questions which were answered in a different manner by various of the witnesses. Be that as it may, however, all witnesses (with the exception of Robertson) were in accord in stating that plaintiff left the car beside which he had been standing and crossed the center line of the highway where he was struck. That he was negligent in so doing is made obvious by his own testimony as follows:
“Q. When did you first see the car that struck you ?
“A. Well, he was right on me when he struck me.
“Q. How far away was the car when you first saw it?
“A. He was just about a car length, and that’s how come I couldn’t get out of the way. It was only a car length and I couldn’t move to save my life.”
In spite of the gross negligence on the part of plaintiff it is argued that he is nevertheless entitled to recover under the doctrine of last clear chance. In discussing this aspect of the case it should first be pointed out that there is no evidence of excessive speed on the part of Baty Sanders. Further, it appears clear that he brought his vehicle to a stop almost immediately after the impact and that the damage to the car was very slight, consisting only of a small dent.
For the doctrine of last clear chance to be applicable, it is well settled that when defendant discovers or should have discovered plaintiff’s peril he must have a reasonable opportunity to avoid the accident. On this point the witness Steve Daniels testified as follows:
“Q. Did you have to yell to Grant or anything else from the time you saw him step across the highway then into this west-bound lane of travel — did you have time to yell to him or anything before he got hit?
“A. Oh, no, sir, I couldn’t tell nothing.
“Q. You mean you didn’t have time to shout to him—
“A. I couldn’t tell—
*179 “Q. —or say, ‘Look out, Grant’, or anything ?
“A. —nothing. The brakes said, ‘Screech, bam.’
The witness Joe Jyles testified as follows:
“Q. As a matter of fact, Grant Moses stepped right into the path of this car that was going towards Clinton ?
“A. Yes, sir.
“Q. When you saw the accident happen, did you have time to yell to him to watch—
“A. No, sir,—
“Q. ■ — out or anything?
“A. • — it was too quick.
“Q. It happened about in the center of that highway to the best of your recollection?
“A. Yes, sir.
“Q. Now, was Grant Moses walking pretty fast, Joe?
“A. Yes, sir, he was walking pretty fast.
“Q. You don’t have any idea how many steps he actually took prior to the moment of the impact?
“A. No, sir.
“Q. But like you said earlier, it was very fast. You didn’t have time to shout to him—
“A. Yes, that’s right.
“Q. —to warn him?
“A. I didn’t have time to shout.”
The witness Simon London gave the following testimony:
“Q. About how far, could you give us a distance somewhere in this courtroom about how close he was to that car when he started across the highway?
“A. It ought to he at least as far as from here to that — you know, to the back side of that place at least.
“Q. As far as from where you are sitting to the back—
“A. Yes, sir.
“Q. —of the courtroom?
“A. Yes, sir.”
The distance referred to by the witness had been previously agreed upon by the Trial Judge and counsel as being approximately sixty feet.
Alton E. Robertson testified that he did not see the Sanders car until the plaintiff was actually struck by it.
Counsel for plaintiff places great emphasis on the testimony of Baty Sanders who stated that he could see the plaintiff talking to the driver of the parked vehicle “from way back yonder”, at which time he reduced his speed from 40 to- 45 miles per hour to 35 to 40 miles per hour, and that he did not remember sounding his horn. The fact of the matter however, as we appreciate the record, is that when Sanders first saw plaintiff he had no reason whatever to believe that he would leave his place of safety and attempt to cross the road in his path. When plaintiff did realize this, it was too late for him to sound his horn or take any other effective steps to prevent the accident, and thus he did not in fact ever have the last clear chance of avoiding the accident.
We conclude that the accident was due solely to plaintiff’s own negligence and that, therefore, his suit must be dismissed.
For the reasons assigned, the judgment appealed from is reversed and plaintiff’s suit dismissed at his cost.
Judgment reversed.